I. P. SIMPSON, ADM'R v. P. & E. REILY & CO.

The claims against estates of deceased persons required to be sworn to by the
49th section of the act of 1848 are "claims for money." (Paschal's Dig.,
Art. 1309, Note 483.)

Where a creditor had presented his account against an estate, making no
reference to any mortgage or lien, which account was allowed and approved,
and afterwards the creditor presented a petition to have a lien declared,
(see statement of the case,) it was *held,* that the previous allowance of the
claim for money gave the county court jurisdiction of a hypothecation of
collateral securities and of a constructive mortgage on land and chattels.

The 59th section of the act reads as follows: "Any creditor of the estate of a
deceased person, holding a claim secured by a mortgage or other lien, which
claim has been allowed and approved or established by suit, may obtain, at
a regular term of the court, from the chief justice of the county where the
letters testamentary or of administration were granted, an order for the sale
of the property upon which he has such mortgage or other lien, or so much
of said property as may be required to satisfy such claim, by making his
application in writing, and having a copy thereof served upon the executor
or administrator, with a citation requiring him to appear and answer such
application." (Paschal's Dig., Art. 1319, Note 493.) This negatives the idea
that a mortgage is a claim for money; it refers to a claim secured by a mort-
gage, which claim has been allowed—not which mortgage has been allowed.

The administrator is required to make all proper defenses, and he can plead
*non est factum,* or any other plea that would defeat the request of the
plaintiff.

ERROR from Bexar.   The case tried before Hon. A. W.
TERRELL, one of the district judges.

There is no statement of facts, but the record shows this
character of case: On the 4th of January, 1859, the firm
of P. & E. Reily & Co. made oath, as required by the statute,
that the estate of Thomas J. Jackson was indebted to their
firm in the sum of $2,713 50, &c.   This account was

allowed by the administrator on the 21st of March, 1859, and approved by the county judge on the 1st of April thereafter. Neither in the affidavit, the account, the allowance, nor the approval, was there any reference to a mortgage, a lien, or hypothecation, to secure the account, which account bears date 3d July, 1857. On the 3d of June, 1859, Reily & Co. presented a petition to the county court, in which they set forth the presentation, allowance, and approval of their claim; and they further averred that Jackson, before his death, for the purpose of securing the claim, deposited with their agents, Vance & Brother, and placed under their control, a *caballado* of horses in Atascosa county, also a claim on William McHenry, out of which last Vance & Brother have realized and have now on hand $1,019 87, and sundry promissory notes on other persons, and sundry title deeds to lands. They averred that this hypothecation with their agents constituted a lien in their favor on said securities and property; whereupon they prayed that their lien be established; that the money in the hands of Vance & Brother be applied to their claim; that when the notes shall be collected the proceeds should also be applied, and that the stock of horses, and the land described in said title papers be sold, or so much thereof as may be necessary for the purpose, and the money therefrom arising be applied until their claim be paid in full. Simpson, the administrator, acknowledged service. The county court heard and dismissed the application. Reily & Co. appealed to the district court. In the district court the administrator filed a demurrer to the action, alleging that the county court had no jurisdiction of the subject-matter. The district court did not notice this demurrer, but ordered that the lien be established, and the horses and land be sold, and that Vance pay the money in hand and the notes when collected to the plaintiff. The administrator prosecuted error.

*Geo. W. Paschal*, for the plaintiff in error, insisted —
I. That the petition showed that the plaintiffs had no
"mortgage or lien" such as is contemplated by the 59th
section of the article about estates. (Paschal's Dig., Art.
1319, Note 493.) That they only showed that the deceased
had deposited certain title deeds and hypothecated certain
notes as collateral security; that no possession of the horses
was averred, and, they being personal property, there could
be no pretense of a mortgage on them, for that a mortgage
on chattels could only exist in writing; and that even if
this were a constructive mortgage on the land, it could
not be enforced in the county court.

II. The record showed that this mortgage or claim of a
mortgage had never been presented to the administrator
and allowed and approved by the chief justice, as required
by the 49th section of the act. (Paschal's Dig., Art. 1309,
Note 483.) That the "claim for money" must not only be
allowed, but the claim for a security must be allowed, as
there might be defenses to the latter which did not exist
as to the former, and the improper allowance or enforce-
ment of a lien might defeat the classification of debts and
prejudice other creditors. (Robertson v. Paul, 16 Tex., 472;
Buchanan v. Monroe, 22 Tex., 542; Cunningham v. Taylor,
20 Tex., 129.)

III. The 59th section of the act harmonizes with this
view. It contemplates that the mortgages as well as the
debt are the claim which has been allowed. The county
court cannot be required for the first time to take juris-
diction of a mortgage existing in parol or even in writing,
when an application is made to enforce this lien, of which
they have never before heard. (Paschal's Dig., Art. 1319,
Note 493.) Of an unrecorded mortgage particularly there
might arise many equities which could not be determined
by the county court. And if the county court had no
jurisdiction, *a quo*, the district court acquired none by
appeal. (Hearn v. Cuthbert, 10 Tex., 217; Baker v. Chis-

holm, 3 Tex., 158; Aulanier v. The Governor, 1 Tex., 168; Horan v. Wahrenberger, 9 Tex., 319; Able v. Bloomfield, 6 Tex., 263.)

The jurisdiction of the county court is given, not by the petition to foreclose the mortgage only, but by the fact that the mortgage or lien on property specifically described had been exhibited, allowed, and approved, and until this be done such claim has no standing in court, and was not a *quasi* judgment.

*C. L. Robards,* for defendant in error, relied upon the doctrine of equitable mortgages, and the case of Danzey v. Swinney, 7 Tex., 625.

MORRILL, C. J.—The question to be decided in this case is, whether it is necessary to present to an administrator of an estate for approval a mortgage given to secure a debt which had been prosecuted and approved by the administrator and allowed by the judge.

Article 1309 [Paschal's Dig.] provides that no executor or administrator shall allow any claim for money against his testator or intestate, unless such claim is accompanied with an affidavit in writing that the claim is just, and that all legal offsets, credits, and payments known to affiant have been allowed.

It is to be observed that the claims required to be sworn to are claims for money.

The act of 1846, which was repealed by the act of 1848, the one now in force, specified claims for money, personal property, or land to be verified in the same manner that claims for money are by the acts now in force. [Paschal's Dig.,] (Art. 1095.)

Is a mortgage a claim for money? Mortgages are sometimes executed cotemporaneously with debts, and so blended with them as to form one transaction, and they may be so separate and distinct that the evidence of the debt gives

no information' as to the existence of the mortgage. It is the last class to which our attention is called. And these mortgages do not purport to be claims, but, on the contrary, they expressly refer to claims *dehors* themselves, and certain provisions to secure the payment thereof. Should the holder of a mortgage make an affidavit in relation to a mortgage that the claim is just, and that all legal offsets, credits, and payments had been made, the claim would necessarily be the one which the mortgage was designed to secure, which in the case at bar had been previously done.

But article 1319 [Paschal's Dig.] seems to be decisive of the case: "Any creditor of the estate of a deceased person, holding a claim secured by a mortgage or other lien, which claim has been allowed and approved or established by suit, may obtain at a regular term of the court, from the chief justice of the county, where the letters testamentary or of administration were granted, an order for the sale of the property upon which he has such mortgage or other lien, or so much of said property as may be required to satisfy such claim, by making his application in writing, and having a copy thereof served upon the executor or administrator, with a citation requiring him to appear and answer such application."

The statute negatives the idea that a mortgage is a claim for money; it refers to a claim secured by a mortgage, which claim has been allowed—not which mortgage has been allowed. The administrator, by this act, is required to make all proper defenses when cited as herein stated, and he can plead *non est factum*, or any other plea that would defeat the request of the plaintiff. The judgment of the district court is

AFFIRMED.